BRYAN CAVE LLP
NAFIZ CEKIRGE (SBN 255710)
120 Broadway, Suite 300
Santa Monica, CA 90401
Telephone: 310.576-2100
Facsimile: 310.576.2200
Email: *nafiz.cekirge@bryancave.com*

GOODWIN PROCTER LLP
Sabrina M. Rose-Smith (admitted *pro hac vice*)
*srosesmith@goodwinprocter.com*
901 New York Avenue NW
Washington, DC 20001
Tel.: 202.346.4000
Fax: 202.346.4444

CATALINA E. AZUERO (admitted *pro hac vice*)
*cazuero@goodwinprocter.com*
53 State Street
Boston, MA 02109
Tel.: 617.570.1000
Fax: 617.523.1231

Attorneys for Defendant
**BANK OF AMERICA N.A.**

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIMI ASH and ROBERT T. ASH,<br><br>    Plaintiffs,<br><br>  v.<br><br>BANK OF AMERICA N.A; and DOES 1 to 20, INCLUSIVE,<br><br>    Defendants. | Case No. 2:10-cv-02821-KJM-KJN<br><br>**DEFENDANT BANK OF AMERICA N.A.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>Judge: Hon Kimberly J. Mueller<br>Courtroom 3, 15th Floor |

**INTRODUCTION**

Defendant Bank of America N.A. ("BANA") moved this Court for summary judgment on all counts. The Plaintiffs' Brief in Opposition to BANA's Motion for Summary Judgment ("Opposition") is unable to save the Plaintiffs' unsupported claims against BANA. First, Plaintiffs offer no opposition to BANA's assertions that they failed to establish their contract or unjust enrichment claims. Second, they provide no substantive response to BANA's assertion that it foreclosed properly. Third, they fail to offer evidence supporting their assertion that there are disputed facts sufficient to survive the motion for summary judgment on their tort claim, fraud or UCL claims.

**ARGUMENT**

**I.     Plaintiffs' Failure to Respond To BANA's Arguments Necessitates Summary Judgment in BANA's favor**

BANA moved for summary judgment on Plaintiffs' breach of contract, breach of good faith and fair dealing, and unjust enrichment claims. Plaintiffs failed to make any response to BANA's motion. As a result, Plaintiffs have waived these three claims, and Defendant is entitled to summary judgment in its favor on all three counts. *Hendon v. Reed*, 2011 WL 335862, *5 (E.D.Cal. 2011) (holding that plaintiffs failure to respond to Defendants arguments constituted a waiver); *see also Ambrose v. Coffey*, 2011WL6182342,* 7  (E.D.Cal. 2011) (finding in favor of defendants where Plaintiffs failed to specifically address Defendants' arguments in their briefs in opposition).

**II.    BANA Properly Foreclosed on the Property**

Defendant's Statement of Undisputed Material Facts ("SUMF") and  Motion  provide facts establishing that BANA properly foreclosed under the relevant statute, Cal. Civ. Code § 2924. SUMF ¶¶ 20-22. Plaintiffs have contested none of the relevant facts with respect to the foreclosure. *See* Plaintiffs' Response to the SUMF ("Response") ¶¶ 7, 20-24.[1]  The Opposition also did not oppose BANA's argument that it followed the legal requirements for foreclosure. As a result of

---

[1] Plaintiffs do not admit that Mrs. Ash was in default, but they provide no evidence to contradict the fact that the account was in default when BANA foreclosed and they concede she made no payments after 2006. Since Defendants' have met their burden showing that Mrs. Ash was in default through record evidence and sworn statements, Plaintiffs must set forth specific facts showing that there is a genuine issue for trial. *Mitchell v. HFS North America, Inc.*, 2011 WL 2961468, *1-2 (E.D .Cal. July 20, 2011) (internal citation omitted).

BANA'S REPLY ISO SUMMARY JUDGMENT    CASE NO. 2:10-CV-02821-KJM-KJN

Plaintiffs' failure to challenge BANA's argument that the foreclosure was proper, or provide evidence in support of their contention that the foreclosure was irregular, Plaintiffs waived any argument they had with respect to the foreclosure. *Hendon v. Reed*, 2011 WL 335862 at *5. Accordingly, the Court should rule that the foreclosure was proper, and Plaintiffs should be prevented from relying on any claim of improper foreclosure for any of their remaining claims.

### III.  Plaintiffs Fail To Offer Evidence Sufficient to Sustain Their Tort Claims

#### A.  BANA's Entry Onto the Property Was Proper

BANA argued that there was no evidence to support a trespass in the record. Despite Plaintiffs' efforts, its Opposition fails to: (1) provide support for the element that requires a possessory interest[2], and (2) create a dispute over the issue of consent.

First, Plaintiffs have failed to identify any evidence that supports their alleged possessory interest in the Property. They rely on: (1) their unsupported allegations that they resided at the property; and (2) their status as heirs at law. Their contention that they resided at the property is unsubstantiated. In fact, Bobby Ash's testimony specifically states that he rarely went, if at all, to the Property in 2007-2008 when the alleged trespass occurred. Azuero Exh. B, at 12:1-14:4. In addition, Mimi Ash's testimony makes clear that she did not reside at Ski Slope during the relevant time, notwithstanding that she said she lived there "part-time" starting in 2001. SUMF ¶ 3, BANA's Reply in Support of its SUMF ("Reply") ¶ 3. Accordingly there is no evidence supporting the claim that they were occupying the Property during the 2007-2008 period when the alleged trespass happened. As *Williams v. Goodwin*, 41 Cal. App. 3d 496, 508 (Cal. App. 1974) held that occupation and possession are synonymous, Plaintiffs have failed to show evidence of any possessory interest in the Property.

In addition, the Plaintiffs cite no authority supporting the argument that their status as heirs gives them a possessory interest in the Property. Moreover, while there is no dispute that Plaintiffs were Robert Ash's legal heirs, there is also no record evidence that they had an interest in this particular piece of his estate. The undisputed evidence shows that the Property was, and still is, a part of the probate estate. There is no evidence that they—and not a creditor—will ultimately own

---

[2] Plaintiffs do not respond to BANA's argument that they have no ownership interest, and thus concede that point.

1  the Property.  Reply ¶ 4.  Accordingly there is no specific testimony to support Plaintiffs' contention

2  that they had a possessory interest in the property. Under Rule 56(e), a non-moving plaintiff cannot

3  defeat summary judgment by resting on mere allegations, and must produce evidence showing

4  specific facts.  As they have failed to do so, Plaintiffs cannot establish their possessory interest.

5  *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc*., 515 F.3d 1019, 1030 (9th Cir. 2008).

6        Second, Plaintiffs' argument that the consent in the Deed of Trust ("the Deed") does not

7  invalidate any trespass claim relies on an incorrect reading of the case law.  Plaintiffs have not

8  pointed to any contract language that negates the consent provisions in the Deed.  In addition, their

9  attempt to distinguish *Openiano v. Bank of Am. Corp*.'s, No. D060901, 2012 WL 6721005, at *6

10  (Cal. App. 4 Dist. Dec. 28, 2012), holding that consent negates trespass, fails.  They argue that,

11  because the plaintiff there did not challenge the foreclosure, and they do, the *Openiano* court's

12  holding is inapplicable here.  However, the court's holding that the consent negated the trespass

13  claim was *not* based on the fact that the plaintiffs had failed to challenge the foreclosure.  *Id.* at *5.

14  Its statements regarding the plaintiff's failure to challenge the foreclosure were dicta; its ruling on

15  the role of consent in negating the trespass was based on the plain language in the deed of trust.  *Id.*

16  at *6.  Additionally,  Plaintiffs' reliance on *Ramon v. Tanglewood Trails Homeowners Ass'n*, 2003

17  WL 1985223, *5 -6 (Cal.App. 4 Dist. April 30, 2003)  for the proposition that consent does not

18  negate the trespass claim is also misplaced.  The court based *Ramon*' s holding on the fact that the

19  conduct exceeded the contractual consent.  It did not hold that a trespass claim could survive the

20  consent given to the action.

21        Finally, summary judgment is appropriate in this case, contrary to Plaintiffs' claim that

22  courts are reluctant to grant summary judgment where the consent is disputed.  Here, unlike in

23  *Spinks v. Equity Residential Briarwood Aparts., 90* Cal. Rptr. 3d 453, 484 (Cal. Ct. App. 6 Dist.,

24  2009), Plaintiffs can provided no specific facts showing that there is a genuine issue for trial

25  regarding the consent.  *Mitchell*, 2011 WL 2961468, *1-2.  They do not specifically challenge

26  BANA's argument that the Deed of Trust applies.  *Id.* ¶1.  The Deed of Trust contains a clause

27  which allowed BANA to do anything "that is reasonable and appropriate" to secure the Property and

28

1  protect the Lender's security interest.  Deed of Trust ¶ 9.  Accordingly, this Court can decide the
2  issue of consent as a matter of law, since there are no disputed material facts.

3        **B.**     <u>**Plaintiffs' Have Not Provided evidence to Support Their Conversion Claim**</u>

4       Plaintiffs' argument that they have provided sufficient evidence for a conversion claim is
5  unavailing.  First, Plaintiffs state they can establish ownership and possession of the personal
6  property through testimony or other record evidence, but fail to identify any specific facts to do so,
7  as required by the local rule and case law.  *Mitchell* , 2011 WL 2961468, *8.  These cursory
8  references are insufficient to survive a motion for summary judgment by creating a dispute of
9  material fact, as the district court has "no independent duty to scour the record in search of a genuine
10 issue of triable fact."  *Simmons v. Navajo Cnty., Arizona*, 609 F.3d 1011, 1017 (9th Cir. 2010)
11 (internal quotation marks and citation omitted).  Accordingly, Plaintiffs have failed to establish that
12 there is a material dispute as to the ownership element of conversion.

13      Second,  Plaintiffs point to the ongoing negotiations between Mrs. Ash and BANA as
14 evidence that there is a dispute over her intention to abandon the property but make no reference to
15 any evidence that Bobby Ash did not intend to abandon the property.   As Plaintiffs have the burden
16 at trial to provide evidence for each claim, they have failed to identify facts that would preclude
17 summary judgment on Bobby's conversion claim.  As to Mimi Ash's intentions regarding the
18 personal property, her ongoing negotiations regarding the work out do not provide evidence of her
19 intention.  Instead, there is evidence that she left the property in a house she was aware was
20 foreclosed on for at least six months.  SUMF ¶ 29[3]; Response ¶¶ 3, 30.

21      Third, Plaintiffs have not pointed (and cannot point) to evidence that BANA intended to
22 convert the personal property found on the Property, as all the testimony indicated that the vendors
23 who cleared the personal property believed it was abandoned.  *See* SUMF ¶ 31.

---

[3] Although Plaintiffs struggle to create a dispute over this simple July email, their efforts are unavailing. *See* BANA's Reply ¶ 29.  The evidence supports that Mrs. Ash's reference to the  rescission on Ski Slope meant a rescission of  the foreclosure, as she first testified at the deposition.  Her later testimony that she did not know what she had been referring to in her email, and that "rescission" could refer to a rescission of the work out agreement is implausible, given the plain language of the email.  Reply ¶ 29.  The court should  not take her self-servicing, contradictory statement as sufficient evidence to create a dispute around the fact that as of July 2008, Mrs. Ash was aware of the foreclosure.

1    Finally, Plaintiffs' argument that California courts are reluctant to rule that property was
2    abandoned where the property owner's intent to abandon such property is not clear is inapposite. In
3    *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138 (9th Cir. 2010) the court held that further factual
4    development on consent was necessary because the record was unclear.  Here there is no material
5    dispute over the operative facts: Plaintiffs did not own the Property, did not go to the property
6    between May 2008 and January 2009, and during five months of that time, Mimi Ash was aware that
7    a foreclosure had occurred and that her personal property remained in a foreclosed property.
8    Accordingly, the court should rule as a matter of law that there was no conversion.

### C. **Plaintiffs Failed to Establish A Duty Sufficient to Support a Negligence Claim or a Negligent Infliction of Emotional Distress Claim**

In its opening motion, BANA showed that it owed Plaintiffs no duty as a servicer or lender, which Plaintiffs essentially concede, making no arguments to support their initial claim that BANA owed them a duty as a "reasonable and prudent" servicer.  *See* Complt ¶45.  Instead, Plaintiffs, for the first time in this Opposition, contend that BANA owes Plaintiffs a duty as a landlord.  *See* Opposition at 14-15.  They further posit, under this new theory that BANA was their landlord, that BANA's duty to them arises from statutes that govern landlords, Cal Civil Code §§ 1983 and 1984. As the operative complaint makes no claims based on the theory that a tenancy existed, or that the rules governing landlords apply to BANA or the conduct at issue, this negligence per se theory is essentially a new claim.  This claim fails for two distinct reasons.

First, it is improperly raised and untimely.  This Court recently denied the Plaintiffs' belated motion to amend the complaint to include claims based on a theory of landlord-tenant.  *See* Docket No. 72, entered on October 15, 2013, denying Plaintiffs' motion to amend, Docket No.59.  The Plaintiffs should not get a second bite at the apple.  In addition, Plaintiffs cannot use their opposition to summary judgment as a back door way to introduce new claims. *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010) (holding a plaintiff cannot raise a new theory in response to a motion for summary judgment); *see also Stations West, LLC v. Pinnacle Bank of OR*, 338 Fed.Appx. 658, 660, 2009 WL 2105554, *1 (9th Cir. July 16, 2009) (affirming dismissal of new claim raised in plaintiff's opposition to summary judgment

4

because it was an improper attempt to amend the complaint after the close of discovery and initiation of summary judgment proceedings).

Second, even if the court were to entertain this theory, it is unfounded in the law. Plaintiffs make the bare allegation that that BANA created a tenancy at sufferance when it foreclosed, becoming their landlord. A tenancy at sufferance, however, is created when "the term of a lease expires but the lessee holds over without the owner's consent, he becomes a tenant at sufferance." *Kaufman v. Goldman*, 195 Cal.App.4th 734, 740, (Cal.App. 1 Dist. 2011). Here there was no lease or any contract between the parties, and thus no basis for Plaintiffs' argument. BANA has found no authority (and Plaintiffs has cited none) for the proposition that, after a foreclosure, a servicer becomes a landlord of a house where no one is living.

Plaintiffs further argue that BANA failed to comply with those statutes, and by doing so committed negligence *per se*. This argument is misplaced, because, by their very terms, the statues relied upon by Plaintiffs do not apply to BANA. Sections 1983 and 1984 explicitly apply to landlords and tenants only.[4] There is no evidence in the record, and Plaintiffs have pointed to none, that BANA fits the statutory description of a landlord or that Plaintiffs fit the definition tenants. Accordingly, Plaintiffs' negligence claim cannot survive summary judgment since: (1) by not making any response, Plaintiffs waive the argument that BANA owes them any duty as a servicer/borrower, *Hendon v. Reed*, 2011 WL 335862, *5; and (2) there is no evidence that BANA is a landlord, which means that §§ 1983 and 1984 do not apply to BANA.

Finally, because Plaintiffs failed to establish that BANA owes them any duty, they cannot sustain their negligent infliction of emotional distress ("NIED"). (Opposition at 18). Moreover, while Plaintiffs are correct that California law allows recovery for pure emotional damages, those damages have to be linked to conduct where emotional damages are predictable. *Butler-Rupp v. Lourdeaux,* 134 Cal. App. 4th 1220, 1229 (Cal. App. 1 Dist. 2005). They have pointed to no case law that supports their assertion that it would be predictable that Plaintiffs would suffer emotional

---

[4] The definition of a landlord for purposes of the statute is any "operator, keeper, lessor, or sub-lessor of any furnished or unfurnished premises for hire, or his or her agent or successor in interest." Cal Civil Code § 1980. A tenant is defined to mean "any paying guest, lessee, or sub-lessee of any premises for hire." *Id.*

5
BANA'S REPLY ISO SUMMARY JUDGMENT                                  CASE NO. 2:10-CV-02821-KJM-KJN

1   harm from the Bank's undisputed proper foreclosure and the actions it took to dispose of property

2   left for months in a home that Plaintiffs did not own.   Accordingly, their NEID claim fails.

3         **D.**      <u>**Plaintiffs Provide No Support For Their IIED Claim**</u>

4         Plaintiffs' argument that BANA's foreclosure and removal of the personal property after the

5   foreclosure are sufficient to meet the intentional infliction of emotional distress ("IIED") standard is

6   mistaken.  First, Plaintiffs' rely on *Riese v. Chase Home Finance, LLC,* No. C 11–03297, 2011 WL

7   4344590, at *4 (N.D. Cal. September 13, 2011) and *Rowen v. Bank of America, N.A.*, No. CV 12–

8   1762 CAS, 2013 WL 1182947, at *3-4 (C.D. Cal. March 18, 2013) in support of their contention

9   that the circumstances around this foreclosure meet the standard for IIED.   Both cases are

10  procedurally and factually inapplicable.  The courts decided *Riese* and *Rowen* under a motion to

11  dismiss standard that does not applies here, and expressly noted that that they had to accept as true

12  all of plaintiff's allegations as pled.  Indeed, in evaluating the IIED claim, both courts relied on the

13  fact that the plaintiffs alleged that the defendants lacked both a good faith bases and a legal right to

14  foreclose.  *See Riese,* 2011WL 4344590, at *4; *Rowen,* 2013 WL 1182947, at *3-4.  In contrast,

15  here, the undisputed facts show that the foreclosure was proper.  *See Section B, supra.*  Accordingly,

16  Plaintiffs are mistaken in stating that these cases show that BANA's conduct during the

17  foreclosure—conducted properly—is sufficient to survive the IIED.

18        Second, Plaintiffs' claims that BANA's conduct meets the outrageous standard because the

19  Property was fully furnished when BANA emptied it, and because BANA was their landlord, not

20  their creditor, are unsupported by any legal authority.   As discussed *supra*, BANA is not Plaintiffs'

21  landlord, and Plaintiffs have provided no support for the idea that BANA's routine actions in

22  disposing of personal property on behalf of the owner weeks after the foreclosure — even if the

23  home had a lot of furniture in it--- was "beyond all bounds of decency."  Indeed, courts have found

24  behavior that they characterize as problematic as insufficient to meet the high IIED standard.  *See*

25  *e.g. Mitchell*, 2011 WL 2961468 at *8  (holding that firing an employee for discriminatory reasons

26  does not give rise to an IIED claim).  Similarly, the court in *McCoy v. Pacific Maritime Assoc.,*  216

27  Cal.App.4th 283, 295, 156 Cal.Rptr.3d 851, 862 - 863 (Cal.App. 2 Dist. 2013) found that where the

28

6

BANA'S REPLY ISO SUMMARY JUDGMENT      CASE NO. 2:10-CV-02821-KJM-KJN

1  "plaintiff faced continued isolation and ostracism" from Defendant's conduct, that conduct did not

2  satisfy the IIED standard because it did not go "beyond all bounds of decency."

3        Third, Plaintiffs' argue that BANA's conduct, although not intentional, meets the reckless

4  standard, namely that actions "undertaken with knowledge of the likelihood that the plaintiff will

5  suffer emotional distress."  The only facts they allege in support of this standard are that BANA was

6  Plaintiffs' landlord and that the house was fully furnished. As discussed *supra*, BANA is not a

7  landlord, and that the house was furnished several weeks after the foreclosure does not provide

8  support that BANA knew that the Plaintiffs would suffer distress from the removal of the personal

9  property from a house that the vendors thought was abandoned  SUMF ¶ 31.[5]

10        Finally, Plaintiffs also rely on the fact that the foreclosure was wrongful to support their

11  claim that their distress was severe.  As discussed *supra*, however, the foreclosure was proper, and it

12  was Plaintiffs' lack of care in leaving their property in a house that they did not own that is the cause

13  of their distress, rather than BANA's actions.   Accordingly, because Plaintiffs are unable to show

14  evidence that BANA's conduct was outrageous and that it caused them distress, their IIED claim

15  fails.

16      **E.**     **<u>Plaintiffs Fail to Offer Evidence that BANA Invaded their Privacy</u>**

17        In their Opposition, Plaintiffs clarified that their invasion of privacy claim is based on the tort

18  of intrusion.  Their challenge to BANA's application of the facts is unavailing.  First, Plaintiffs'

19  argument that BANA did not have consent to enter the Property is misplaced, as they failed to put

20  forward any evidence that disputes that the Deed of Trust provided BANA with the ability to enter

21  the Property under certain conditions or that the foreclosure was improper.  *See supra*.

22        Second, Plaintiffs' reliance on the fact that they resided in the home part- time in the past and

23  left their belongings in the property is factually incorrect and insufficient as a matter of law to create

24  a reasonable expectation of privacy.   As discussed *supra*, by their own admission, the Plaintiffs did

25  not own or reside in the Property in 2008-2009 when the alleged invasions took place.  Plaintiffs

26

27  [5] While Plaintiffs claim they dispute the facts as stated in ¶ 31 of the SUMF, they provide no evidence that creates a dispute.  *See* Reply ¶ 31.  The fact that the house was furnished and locked, facts they cite in their Response, do not
28  negate Mr. Vandermeyden's reasonable belief that it was abandoned, based on the fact the toilets were not hooked up, it was a vacation home, and titled in the name of an estate.

7

BANA'S REPLY ISO SUMMARY JUDGMENT            CASE NO. 2:10-CV-02821-KJM-KJN

cannot credibly argue that they had a reasonable expectation of privacy in the Property when they did not own the Property and it was under constant threat of foreclosure.

Finally, Plaintiffs claim that the evidence establishes that the vendor's conduct was highly offensive because the room was "fully furnished, in neat order, [and] the interior was in excellent condition" when they vendors first arrived.  Opposition at 24.  However, the undisputed facts show that the vendors believed the vacation home had been abandoned.  SUMF, Reply ¶ 31.  Their belief that the Property was an abandoned vacation home during the height of the economic collapse of 2008 was reasonable, and, accordingly, their conduct in cleaning out the house is not highly offensive.   Thus, Plaintiffs have failed to either create a factual dispute or establish their invasion of privacy claim as a matter of law.

### F. Plaintiffs Failed To Support Their Fraud Claim

Plaintiffs argue that (1) there are disputed issues of material fact with respect to BANA's alleged misrepresentations; and (2) they have sufficiently established the elements of fraud.   These cursory arguments are unsupported by the record.   First, Plaintiffs failed to identify any affirmative misrepresentation made by BANA. Opposition at 25-26.[6]   Instead, their fraud claims rest on their allegations that BANA representatives did not tell Mrs. Ash when they spoke to her in April that the foreclosure was going forward and that they did not tell her of the removal of the personal property during their discussions of the modification.  The record evidence shows, however, that BANA took steps to inform Mrs. Ash of both the pendency of the foreclosure and the removal of the personal property.   As to the foreclosure, it is undisputed that Mrs. Ash received all the legally required notices of foreclosure, *see* SUMF , Reply ¶¶ 21, 22.  In addition, the loan modification offer unambiguously states that the foreclosure would go forward if the loan modification was not completed, and BANA told Mrs. Ash the home would be foreclosed if it did not receive the modification documents.  SUMF Reply ¶¶ 13-16.   Mrs. Ash was aware as late as March 2008 that BANA had not received the loan modification documents and funds she claimed she sent.  SUMF, Reply ¶¶ 15-16.  On May 6, 2008, she was told her file was closed.  *Id.* ¶ 28.  That coupled with the

---

[6] Note that Plaintiffs have brought forward no evidence that there were any communications between Bobby Ash and BANA.  Accordingly, Bobby Ash cannot maintain a fraud claim with respect to BANA, on that ground alone.

fact that Mrs. Ash had been repeatedly told that if the modification failed the house would be foreclosed upon, confirm that BANA was clear about the potential for foreclosure. Plaintiffs' argument that they did not know a foreclosure was pending is unsupported by the facts.

Second, as to BANA's disclosure of the property removal, it is undisputed that BANA's vendor sent the notices to the estate regarding the removal of the personal property consistent with BANA's practices, including posting a sign on the property. Reply ¶ 18. That Plaintiffs do not agree with the practices is insufficient to create a dispute of fact that BANA sent the notifications. BANA had no way of knowing that Mrs. Ash would not go to the property for over seven months and fail to see the sign. Accordingly, there was no omission regarding the removal of the personal property, as BANA sent notices of the pending removal of the personal property.

Finally, Plaintiffs are unable to demonstrate facts supporting the remaining fraud elements, and as the plaintiff has the burden of proof at trial, BANA need only "only prove that there is an absence of evidence to support the non-moving party's case." *Britz Fertilizers, Inc. v. Nationwide Agribusiness Ins. Co.*, 2013 WL 5519605, *4 (E.D.Cal. October 3, 2013) (internal citations and quotations omitted) . The undisputed record evidence supports BANA's motion that the fraud claim is unsupported, and should fail.

### G. Plaintiffs' UCL Claims are Unsupported

It appears that Plaintiffs rest on two grounds for their UCL claim: (1) unlawfulness, based on Plaintiffs' assertion that BANA violated California Civil Code ¶¶ 1983, 1984 and (2) unfairness based on the fact that BANA continued to negotiate with Mrs. Ash regarding a modification, even after it foreclosed. Neither of these claims is supported by the undisputed record facts or the law.

First, as discussed *supra* at 4-5, Plaintiffs' attempt to create a statutory duty for the first time in the Opposition to prop up its insufficient claim is improper and unsuccessful. Even if they could rely on the statutes, BANA has not violated ¶¶ 1983, 1984, because they, by their own terms do not govern BANA's behavior. Accordingly, Plaintiff cannot succeed under the unlawfulness prong of the UCL, or the unfairness test that requires that the Defendant's action violates a specific statute.

1  Second, Plaintiffs' UCL claim also appears to be based on an unfairness theory,[7] grounded
2  in the fact that BANA continued loan modification negotiations with Mrs. Ash[8] after the
3  foreclosure occurred.[9] Although plaintiffs fail to apply any test for unfairness, or provide any
4  support for their assertion that BANA's conduct is unfair under the statute, an application of the test
5  shows that their unfairness claim fails.

6  Under the balancing test, plaintiffs must demonstrate that their harm outweighs the utility of
7  the defendant's conduct. *See* BANA's Moving Brief at 29-30 citing to *Walker v. Countrywide Home*
8  *Loans, Inc.*, 98 Cal.App.4th 1158, 1170 (Cal.App.2.Dist. 2002). Despite Plaintiffs' assertion that
9  BANA never told Mrs. Ash "what was really going on," namely that the Property had been
10 foreclosed upon, and the personal property removed during their negotiations for a loan
11 modification, Plaintiffs have provided no evidence to support this claim. Instead, the undisputed
12 evidence shows that: (1) the foreclosure was proper, (2) BANA provided the proper notices of
13 foreclosure, (3) Mimi Ash was aware of the foreclosure at least as of July 2008, and (4) BANA
14 attempted through its vendors to advise the Estate of the disposal of the personal property found on
15 the Property post-foreclosure. *See* SUMF, Reply ¶¶ 21, 22, 25, 26, 29, 32. As Plaintiffs have failed
16 to provide any evidence that BANA's conduct around the loan modification after the foreclosure
17 caused Plaintiffs harm, their UCL claim fails.

18 For the foregoing reasons, BANA requests that this Court grant their Motion for Summary
19 Judgment.

---

[7] To the extent Plaintiffs are relying on its fraud arguments to support the UCL claim, Plaintiffs have failed to identify any statements that were likely to deceive the public, or even the plaintiffs, s*ee supra* at 8-9; Moving Brief at 29-30, and accordingly their UCL claim fails. *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1204-05 (9th Cir. 2010).

[8] Again, Bobby Ash has provided no evidence that BANA ever communicated with him, or directed any behavior toward him. As such his UCL claim fails on that basis as well.

[9] As to Plaintiff s' single reference to a "Bait and Switch", that is similarly unavailable. A bait and switch usually refers to some kind of false advertising. *See Nehme v. BAC Home Loans Servicing, LP*, 2013 WL 5617131, *3 (Cal.App. 2 Dist. October 15, 2013) (noting that plaintiffs define bait and switch in the context of false or misleading statements in advertising). There is no record evidence related to any advertising, marketing or sale that BANA made, nor has Plaintiffs cited to any facts supporting a "bait and switch" theory.

|   |   |
|---|---|
| 1 | Respectfully submitted, |
| 2 | **Bank of America, N.A.** |
| 3 | |
| 4 | /s/ Catalina E. Azuero |
|   | Sabrina M. Rose-Smith |
|   | srosesmith@goodwinprocter.com |
| 5 | Goodwin Procter LLP |
|   | 901 New York Ave NW |
| 6 | Washington, DC 20001 |

Catalina E. Azuero
cazuero@goodwinprocter.com
Goodwin Procter LLP
Exchange Place
Boston, MA 02109

Nafiz Cekirge
BRYAN CAVE LLP
120 Broadway, Suite 300
Santa Monica, CA 90401

*Counsel for Defendant Bank of America N.A.*

Dated: October 18, 2013

1

**PROOF OF SERVICE**

2

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on October 18, 2013.

3

4

/s/ Catalina E. Azuero

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28