1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   MIMI ASH and ROBERT T. ASH,              No. 2:10-cv-02821-KJM-KJN

12              Plaintiffs,

13        v.                                  ORDER

14   BANK OF AMERICA N.A; and DOES 1
     to 20, INCLUSIVE,
15
16              Defendants.

17            This matter is before the court on defendant Bank of America N.A.'s ("BofA")

18   Motion for Summary Judgment.  (Def.'s Mot. Summ. J., ECF 69.)  Plaintiffs Mimi Ash and

19   Robert T. Ash oppose the motion.  (Pls.' Opp'n, ECF 71.)  The court held a hearing on the matter

20   on October 25, 2013, at which Andrew Garcia appeared for plaintiffs and Sabrina Rose-Smith for

21   defendant.  As explained below, the court GRANTS in part and DENIES in part defendant's

22   motion for summary judgment.

23   I.       RELEVANT BACKGROUND

24            A.       PROCEDURAL BACKGROUND

25            On October 19, 2010, plaintiff Mimi Ash ("Mrs. Ash") filed a complaint alleging

26   eleven causes of action.  (Pls.' Compl., ECF 2.)  On November 16, 2010, plaintiff amended her

27   complaint and added a new plaintiff, Robert T. Ash ("Bobby Ash").  (Pls.' First Am. Compl.,

28   ECF 9.)  The First Amended Complaint alleges eleven causes of action: (1) trespass;

                                              1

1  (2) conversion; (3) negligence; (4) negligent infliction of emotional distress; (5) intentional

2  infliction of emotional distress; (6) invasion of privacy; (7) breach of contract; (8) breach of the

3  implied covenant of good faith and fair dealing; (9) unjust enrichment; (10) fraud; and

4  (11) violation of California Business and Professions Code section 17200 et seq.  (*Id.*)  On

5  December 22, 2010, then-defendant Bank of America Corporation ("BAC") filed an answer to

6  plaintiffs' amended complaint.  (ECF 11.)  On September 20, 2013, this court issued a minute

7  order granting the parties' stipulated request to substitute Bank of America, N.A. ("BofA") as

8  successor in interest to Countrywide Home Loans Servicing, L.P. ("Countrywide") in place of

9  BAC as a defendant.  (ECF 68.)[1]

10                On September 24, 2013, defendant brought the instant motion for summary

11  judgment on all of plaintiffs' causes of action.  (ECF 69.)  Plaintiffs filed a response on

12  October 11, 2013.  (ECF 70.)  On October 18, 2013, defendant filed a reply.  (ECF 73.)

13       B.       UNDISPUTED FACTUAL BACKGROUND

14                On July 3, 2003, Robert L. Ash ("Mr. Ash") executed a deed of trust for the

15  property located at 13405 Ski Slope Way, Truckee, California 94161 ("Property").  (ECF 69-10,

16  Ex. A at 5.)  Mr. Ash was the sole borrower on the deed of trust.  (*Id.*)  Section nine of the deed of

17  trust provides as follows, in relevant part:

18           If . . . Borrower fails to perform the covenants and agreements
             contained in this Security Instrument, . . . then Lender may do . . .
19           whatever is reasonable or appropriate to protect Lender's interest in
             the Property and rights . . . including . . . securing and/or repairing
20           the Property.  [. . .]  Securing the Property includes . . . entering the

21                [1] The Ninth Circuit provides that "'[plaintiffs] should be given an opportunity through
      discovery to identify [] unknown defendants'" "in circumstances . . . 'where the identity of the
22    alleged defendant[] [is] not [] known prior to the filing of a complaint.'"  *Wakefield v. Thompson*,
      177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.
23    1980)) (modifications in the original). Plaintiff is warned, however, that such defendants will be
      dismissed where "'it is clear that discovery would not uncover the identities, or that the complaint
24    would be dismissed on other grounds.'"  *Id.* (quoting *Gillespie*, 629 F.2d at 642). Plaintiff is
      further warned that Federal Rule of Civil Procedure 4(m), which states that the court must dismiss
25    defendants who have not been served within 120 days after the filing of the complaint unless
      plaintiff shows good cause, is applicable to doe defendants.  *See Glass v. Fields*, No. 1:09-cv-
26    00098-OWW-SMS PC, 2011 U.S. Dist. LEXIS 97604 (E.D. Cal. Aug. 31, 2011); *Hard Drive
      Prods. v. Does*, No. C 11-01567 LB, 2011 U.S. Dist. LEXIS 109837, at *2-4 (N.D. Cal. Sep. 27,
27    2011).

28

                                              2

Property to make repairs, change locks, replace or board up doors and windows . . . .

(*Id.* at 12.)

On August 17, 2005, Mr. Ash died intestate, survived by his wife Mrs. Ash and son Bobby Ash. (ECF 75 ¶¶ 2-3.) Mrs. Ash was appointed as the administrator of Mr. Ash's estate of which the Property became part. (*Id.* ¶ 2.) There is no evidence to indicate that any of the plaintiffs ever owned the Property in their individual capacities. In 2005, after Mr. Ash's death, Mrs. Ash stopped making the monthly payments for the Property. (ECF 70-5, Ex. C at 18:15-19.) However, the loan was brought current once in 2006. (ECF 75 ¶¶ 6, 9.)

In April 2007, defendant sent notice of default and election of sale to P.O Box 378 in Newcastle, California and recorded the notice of default in Nevada County. (*Id.* ¶ 21.) The foreclosure date was postponed, however, as the parties began negotiations regarding a possible loan modification in November 2007. (*Id.* ¶¶ 9, 13, 21.) The loan modification documents, sent by the Home Retention Department, required Mrs. Ash to sign, notarize, and send them back with the requested funds. (*Id.* ¶ 13.) The requested amount was $4,000.00. (*Id.*; ECF 69-8, Ex. I at 52-53.) Defendant did not receive the documents or the requested amount. (ECF 75 ¶ 13.) On April 5, 2008, defendant closed Mrs. Ash's file for noncompliance. (*Id.* ¶ 17.) On April 26, 2008, an employee of defendant's left a phone message for Mrs. Ash. (*Id.* ¶ 18.) Eventually, on May 2, 2008, the Property was sold to the Bank of New York, Mellon, at a public auction. (*Id.* ¶ 24.)

After the foreclosure sale, on May 12, 2008, defendant ordered a lock change to be conducted by a subcontractor. (*Id.* ¶ 31.) Defendant does not dispute that the Property was fully furnished and had clothes and other items in it when defendant's subcontractor entered the Property. (*Id.* ¶ 30.) In dealing with personal property left in a foreclosed property, defendant's procedure, effected by a subcontractor, was to post an eighteen-day notice on the door of the foreclosed property and then send the same notice via certified and regular mail to the property address. (*Id.* ¶ 32.) The subcontractor would also note on top of the mail "[p]lease forward, if forward address is available." (*Id.*)

/////

3

On June 20, 2008, after the eighteen-day notice period ended, defendant requested that one of its vendors, Central Valley Mortgage, "trash out" the personal property. (*Id.* ¶¶ 34-35.)  The vendor, in turn, contracted with its subcontractor to do the work, and the subcontractor partially "trashed out" the personal property on June 20 or 21.  (*Id.* ¶ 35.)

On January 5, 2009, Mrs. Ash sent an email to defendant's Home Retention Department complaining about the lock change and the disposal of some of her personal property. (*Id.* ¶¶ 38, 39.)  Approximately two weeks later, on January 20, 2009, defendant's subcontractor trashed out the remaining personal property in the house.  (*Id.* ¶ 36.)  Defendant kept the records of sale and property preservation in a system called "Equator," which was not accessible to the Home Retention Department, which had dealt with Mrs. Ash's request for workout assistance. (*Id.* ¶ 40.)

Following the May 2008 foreclosure sale, the parties continued to engage in negotiations.  (*Id.* ¶ 41.)  In March 2009, defendant rescinded the foreclosure sale.  (*Id.*)  As part of post-foreclosure negotiations, defendant offered Mrs. Ash workout agreements, in the form of special forbearances.  (*Id.* ¶ 42.)  Defendant, however, did not receive any payments as required by the special forbearance agreements and received only one signed copy of an agreement.  (*Id.* ¶ 43.)  Because plaintiffs did not comply with the conditions of the special forbearance agreements, defendant again referred the property to be foreclosed.  (*Id.* ¶ 44.)

The parties do not dispute that the personal property trashed out of the house included, but was not limited to: the remains of Mr. Ash, Bobby's deceased father, contained in an urn, Persian rugs, Rolex watches, Bobby's Junior Olympic Freestyle Skiing medals, videos of Bobby playing football from the ages of six to fourteen, videos of Bobby skiing, and the first half of a demo tape of Bobby skiing during the first ski season following his father's passing.  (*Id.* ¶ 46.)

II.     STANDARD

Summary judgment is appropriate where a court is satisfied "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The "threshold inquiry" is whether "there are any genuine factual issues

4

that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When the court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in . . . [the] [non-movant's] favor." *Id.* at 255.

The moving party bears the initial burden of demonstrating to the court "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the burden of persuasion at trial would be on the non-moving party, the movant may satisfy the initial burden by either (1) introducing affirmative evidence that negates an essential element of the non-moving party's claim; or (2) showing that the nonmoving party's evidence is insufficient to establish  an essential element of the non-movant's case. *Id.* at 331. When the non-moving party adopts the second option, conclusory statements that the non-moving party lacks any evidence are insufficient to meet the initial burden. *See id.*

Once the moving party satisfies this initial burden, the burden then shifts to the non-moving party, who "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). A fact is "material" when it might affect the outcome of the suit under the applicable substantive law governing the claim. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). A factual dispute is "genuine" where the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Id.* The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. Rather, to survive summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

1    FED. R. CIV. P. 56(c)(1).  Additionally, in resolving the merits of a party's motion for summary

2    judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to

3    determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  Thus, for

4    instance, competent testimony by a single declarant may defeat summary judgment though

5    opposed by many other declarants.  *United States v. 1 Parcel of Real Prop., Lot 4, Block 5 of*

6    *Eaton Acres*, 904 F.2d 487, 491-92 (9th Cir. 1990).  Affidavits and declarations may be used to

7    support a motion, but summary judgment may be granted only "if the movant shows that there is

8    no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

9    law."  FED. R. CIV. P. 56(a).

10   III.    DISCUSSION

11          In support of its motion for summary judgment, defendant raises the following

12   arguments: (1) plaintiffs' trespass claim cannot stand because plaintiffs have no evidence of

13   defendant's unlawful entry; (2) plaintiffs' conversion claim cannot stand because there is

14   evidence of plaintiffs' abandonment; (3) plaintiffs' negligence and negligent infliction of

15   emotional distress claims ("NIED") cannot stand because there is no evidence that defendant

16   owed them a duty; (4) plaintiffs' intentional infliction of emotional distress ("IIED") claim cannot

17   stand because there is no evidence of outrageous conduct; (5) plaintiffs' invasion of privacy claim

18   cannot stand because there is no evidence of defendant's intrusion or disclosure; (6) "there is no

19   evidence of any contract formed between the [p]arties"; (7) unjust enrichment is not recognized

20   as a separate claim under California law; (8) plaintiffs' fraud claim cannot stand because there is

21   no evidence that defendant made "false statements or that [p]laintiffs justifiably relied on any

22   representations . . ."; and (9) plaintiffs have no evidence to support a violation of California

23   Business and Professions Code section 17200.  (ECF 69 at 1.)  The court will address these

24   arguments in turn.  As a federal court sitting in diversity, the court applies the substantive law of

25   California.  *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  Also, as a preliminary matter,

26   the court notes the parties do not dispute that Bobby Ash was a minor at the time of defendant's

27   alleged wrongful conduct and "any dealings with [defendant] were through his mother."  (Pls.'

28   Resp. Def.'s Statement Undisputed Facts ¶ 50, ECF 70.)

A.      Trespass

Defendant argues plaintiffs' "trespass claim fails for two independent reasons . . . ." (ECF 69-1 at 10.)  First, plaintiffs "have no evidence showing a right to ownership or possession . . . ." (*Id.* at 11.)  Defendant reasons because plaintiffs have never owned the Property, they cannot establish ownership interest in the Property.  (*Id.*)  Defendant argues plaintiffs cannot establish possessory interest in the Property because there is no evidence plaintiffs had a right to possession: plaintiffs did not reside at the Property, it took plaintiffs eight months to discover "that anything was amiss" with the Property, and Mrs. Ash testified she did not know "if she would be able to keep the Property." (*Id.*)  Second, defendants argue plaintiffs' trespass claim cannot stand because plaintiffs have no evidence that defendant's entry was unauthorized, "whether or not the foreclosure was valid." (*Id.*)  Defendant argues it had the right to enter the Property under the terms of the deed of trust when Mr. Ash's estate defaulted on the payments. (*Id.*)

Plaintiffs respond ownership interest in a property is not necessary to state a claim for trespass. (ECF 71 at 7.)  As to possession, plaintiffs argue, they had "actual possession of . . . [the property]" at the time of the first alleged unauthorized entry in May 2008. (*Id.* at 8.)  Moreover, plaintiffs reason defendant's entry was unauthorized, even if the foreclosure was lawful, because defendant "forcibly entered the Property" and, "without any judicial process" or "prior notice to [p]laintiffs," "changed the locks in May 2008." (*Id.* at 9.)  As a result of this conduct, plaintiffs argue they have suffered damages in the form of "personal property loss and emotional distress . . . ." (*Id.* at 10.)

Trespass is the unauthorized or wrongful entry or intrusion onto real property of another that interferes with that person's right to exclusive possession of the real property.  *Civic W. Corp. v. Zila Indus., Inc.*, 66 Cal. App. 3d 1, 17 (1977).  "The cause of action for trespass affords protection for a possessory, not necessarily an ownership interest." *Allen v. McMillion*, 82 Cal. App. 3d 211, 218 (1978).  Indeed, a plaintiff in actual possession does not need to have legal rights in the property to support a trespass claim.  *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1042 (2009).  The fact that a defendant may have title or the

7

1  right to possession of the property is no defense to a cause of action for trespass by one in

2  peaceable though wrongful possession of real property.  *Id.* at 1042-43.

3          Although trespass is an intentional tort, the only intent required is the intent to be

4  present on the real property where trespass occurred.  *Meyer v. Pac. Employers Ins. Co.*, 233 Cal.

5  App. 2d 321, 326 (1965).  A plaintiff need not show that a defendant intended to cause harm.  *Id.*

6  Finally, a plaintiff must prove causation and harm, and in the absence of actual damages, a

7  plaintiff may recover nominal damages.  *Staples v. Hoefke*, 189 Cal. App. 3d 1397, 1406 (1987).

8          A claim for trespass may not stand when the entry is consensual, unless the entrant

9  exceeds the scope of consent.  *Civic W. Corp.*, 66 Cal. App. 3d at 16-17.  An agreement between

10  parties may expressly or impliedly allow entry under certain circumstances, thus affording a

11  defense to trespass.  *See Williams v. Gen. Elec. Credit Corp.*, 159 Cal. App. 2d 527, 532 (1958)

12  (finding implied permission to enter the plaintiff's home from the language of the conditional

13  sales agreement).

14          Here, it is undisputed that plaintiffs did not have legal title to the Property.  (ECF

15  70 ¶ 4.)  As to possession, the court finds there is a genuine dispute whether plaintiffs were in

16  possession of the Property; although defendant states plaintiffs "did not reside in the Property,"

17  plaintiffs aver they did reside in the Property on a part-time basis.  (*Id.* ¶ 3.)

18          However, plaintiffs cannot show defendant's entry was unlawful, because they

19  cannot meet the lack of consent element for a trespass claim.  *See Civic W. Corp.*, 66 Cal. App. 3d

20  at 16-17.  Section nine of the deed of trust, as noted above, allowed defendant to do . . . whatever

21  is reasonable or appropriate to protect Lender's interest . . . including . . . securing and/or

22  repairing the Property," if Mr. Ash (or his estate) failed to abide by the terms of the loan.

23  (Haworth Decl., Ex. A at 12, ECF 69-10.)  The deed of trust specifically provided:  "[s]ecuring

24  the Property includes . . . entering the Property to make repairs, change locks, replace or board up

25  doors and windows . . . ."  (*Id.*)  It is undisputed that after Mr. Ash's death, Mrs. Ash stopped

26  making payments on the mortgage (ECF 9 ¶ 13; ECF 70 ¶ 5), thus violating the first covenant

27  under the deed of trust (*see* ECF 69-10 at 8).  Defendant thus was entitled to exercise its right to

28  secure the Property as provided by the deed of trust.  (*See id.* at 12.)  Plaintiffs do not provide

1    sufficient evidence to raise a material dispute as to defendant's authority under the deed of trust.

2    The court GRANTS defendant's motion for summary judgment as to plaintiffs' claim for

3    trespass.

4              B.        Conversion

5              Defendant argues plaintiffs' claim for conversion fails for two reasons.  First,

6    plaintiffs have not offered evidence to prove ownership or right to possession of the personal

7    property located in the house.  (ECF 69-1 at 12-13.)  Second, even assuming plaintiffs can

8    demonstrate ownership or possessory rights, "the undisputed evidence of their actions after

9    default and after receiving notice that the home would be foreclosed upon show that [p]laintiffs

10   abandoned the property."  (*Id.* at 13.)  To support its abandonment argument, defendant argues

11   plaintiffs were aware of the foreclosure and did nothing for six months to regain the personal

12   property they now claim was converted.  (*Id.*)

13             As to defendant's first argument, plaintiffs respond their testimony establishes they

14   owned most if not all of the personal property at issue.  (ECF 71 at 12.)  As to defendant's

15   abandonment argument, plaintiffs say, "[t]he only reason [p]laintiffs did not remove their

16   personal property . . . is because they were under the reasonable belief that the Property would not

17   be foreclosed . . . ."  (*Id.* at 13.)  Plaintiffs argue, "[a]t a minimum, the facts of this case establish

18   a material issue as to whether [p]laintiffs intended to abandon their personal property."  (*Id.*)

19             Conversion is defined as "the wrongful exercise of dominion over the [personal]

20   property of another."  *L.A. Fed. Credit Union v. Madatyan*, 209 Cal. App. 4th 1383, 1387 (2012)

21   (quoting *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (1998)).  To establish a conversion

22   claim, a plaintiff needs to show the following: (1) ownership or right to possession of personal

23   property at the time of the conversion; (2) a defendant's exercise of dominion over a plaintiff's

24   personal property by a wrongful act; (3) lack of consent; and (4) causation and harm.  *Id.*  As in

25   trespass, wrongful intent is not required; the only intent required is the intent to exercise

26   dominion.  *See id.* ("Conversion is a strict liability tort.").  Similarly, a plaintiff need not have

27   legal title to be able to sue for conversion; possession or right to immediate possession alone may

28   /////

9

1  be sufficient.  *Spates v. Dameron Hosp. Assn.*, 114 Cal. App. 4th 208, 222 (2003) (holding next

2  of kin have possessory rights in the remains of a deceased's body).

3        One way to establish lack of possessory or ownership rights is to show a plaintiff's

4  intent to abandon those rights.  *Ananda Church of Self-Realization v. Mass. Bay Ins. Co.*, 95 Cal.

5  App. 4th 1273, 1282 (2002) (upholding an abandonment defense to a conversion claim and

6  holding an owner abandons key incidents of ownership by placing personal property in the

7  outdoor trash).  Abandonment is present when a person relinquishes all title, possession, or claim

8  to personal property.  *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1146 (9th Cir. 2010) ("A

9  thing is abandoned when the owner throws it away, or leaves it without custody, because [the

10  owner] no longer wishes to account it as his [or her] property." (quoting *Ananda Church of Self-*

11  *Realization*, 95 Cal. App. 4th at 1282)).

12        Defendant's argument that plaintiffs did not own the personal property at issue

13  unavailing because defendant cannot meet its initial burden of demonstrating the absence of

14  evidence to support plaintiffs' right to possession or ownership in the personal property.  *See*

15  *Celotex Corp.*, 477 U.S. at 331 (holding conclusory statements that the non-moving party lacks

16  any evidence are insufficient to meet the initial burden).  Bobby Ash in his deposition testified he

17  had "[s]kis, clothes, TV, video games . . . ," a Rolex watch and golf clubs at the Property.  (ECF

18  70-6 at 13:13-21, 34-35.)  As to Mrs. Ash's possessory rights, the photographs provided by

19  plaintiffs show the Property furnished with various personal items.  (ECF 70-3; ECF 70-4.)

20  Defendant has not met its initial burden of showing no genuine dispute as to plaintiffs' ownership

21  or possessory rights in the personal property.

22        As to defendant's abandonment argument, the court finds there is a genuine

23  dispute as to whether plaintiffs intended to abandon the personal property.  Defendant argues

24  plaintiffs' intent to abandon can be inferred because: "Mrs. Ash left the personal property in a

25  house that she knew was in imminent danger of being foreclosed," and even when she learned the

26  house had been sold to a third party, she still did not do anything to retrieve the property for six

27  months.  (ECF 69-1 at 13.)  Plaintiffs respond there is no evidence to establish plaintiffs' intent to

28  abandon.  (ECF 71 at 11-14.)

1        It is undisputed that a foreclosure auction took place on May 2, 2008.  (ECF 70

2  ¶ 24.)  It is also undisputed that Mrs. Ash spoke with defendant's representatives twice in March

3  2008.  (ECF 70 ¶ 16.)  At the same time, the record shows there were various emails exchanged

4  between plaintiffs and defendant's representatives even after the foreclosure, in which they

5  discuss the modification process and rescission of the foreclosure.  (ECF 69-7 at 28-49.)  Thus, it

6  is not clear plaintiffs knew the foreclosure was final and voluntarily relinquished any rights they

7  had in their property, or whether plaintiffs thought they could still obtain some relief, and so

8  decided to leave their personal property in the house until they received a definite answer from

9  defendant.  Because plaintiffs raise contested issues of material fact as to plaintiffs' intent to

10  abandon, the court DENIES defendant's motion for summary judgment as to plaintiffs'

11  conversion claim.  *See CRS Recovery, Inc.*, 600 F.3d at 1146 (summary judgment may be

12  inappropriate where facts suggest a party's intent to abandon are not clear from evidence).

13        C.     Negligence

14        Plaintiffs appear to base their negligence claim on defendant's alleged improper

15  removal of personal property and not on the allegations regarding loan modification negotiations.

16  (ECF 71 at 14-18.)  Defendant argues "[a]s to the removal of the personal property, [defendant's]

17  vendor provided notice of the removal of the personal property pursuant to its normal practices

18  and consistent with California Law."  (ECF 69-1 at 17.)

19        Plaintiffs respond, by relying on the negligence per se doctrine, that defendant

20  owed a duty of care to plaintiffs as prescribed in sections 1983 and 1984 of the California Civil

21  Code.  (ECF 71 at 15.)  Specifically, plaintiffs argue defendant did not comply with the

22  requirements of section 1983 and 1984 of California Civil Code.  (*Id.*)

23        To establish a negligence claim, a plaintiff must show: (1) a duty of care on the

24  defendant's part; (2) the defendant's breach of that duty of care; (3) causation; and (4) harm.

25  *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998).  Because the existence of a

26  duty is a question of law to be decided by a judge, such a claim may be well suited for summary

27  judgment resolution.  *Regents of Univ. of Cal. v. Superior Court*, 183 Cal. App. 4th 755, 758

28  (2010).

1    In determining whether a duty exists, the court balances a number of factors often

2 referred to as the *Rowland* factors.  *See Melton v. Boustred*, 183 Cal. App. 4th 521, 530 (2010).

3 Major factors include:  (1) foreseeability of harm; (2) "the closeness of the connection between

4 the defendant's conduct and the injury suffered"; (3) "the moral blame attached to the defendant's

5 conduct"; (4) "the policy of preventing future harm"; (5) "the extent of the burden to the

6 defendant and consequences to the community of imposing a duty to exercise care with resulting

7 liability for breach"; and (6) the availability and cost of insurance against the risk.  *Id.* (quoting

8 *Rowland v. Christian*, 69 Cal. 2d 108, 112-13 (1968)).

9    Additionally, a violation of a statute, regulation, or ordinance establishing the

10 standard of appropriate conduct may constitute negligence per se when the violation is the cause

11 of harm.  *Satterlee v. Orange Glenn Sch. Dist. of San Diego Cnty.*, 29 Cal. 2d 581, 588 (1947),

12 *disapproved of on other grounds by Alarid v. Vanier*, 50 Cal. 2d 617 (1958).  Under this doctrine,

13 statutes "may be borrowed in the negligence context for one of two purposes: (1) to establish a

14 duty of care, or (2) to establish a standard of care."  *Elsner v. Uveges*, 34 Cal. 4th 915, 927 n.8

15 (2004).  Where the negligence per se doctrine applies, it creates a rebuttable presumption of

16 negligence affecting the burden of proof.  CAL. EVID. CODE § 669.  This presumption arises only

17 if the following four requirements are met: "(1) [defendant] violated a statute, ordinance, or

18 regulation of a public entity; (2) [t]he violation proximately caused . . . injury to . . . property; (3)

19 [t]he . . . injury resulted from an occurrence of the nature which the statute, ordinance, or

20 regulation was designed to prevent; (4) [t]he person suffering . . . the injury . . . was one of the

21 class of persons for whose protection the statute, ordinance, or regulation was adopted."  *Id.*  The

22 first two elements are questions of fact to be determined by a trier of fact, but the last two

23 elements are questions of law to be determined by the court.  *Hoff v. Vacaville Unified Sch. Dist.*,

24 19 Cal. 4th 925, 938 (1998).

25    Here, from the parties' briefs and arguments at hearing, it is evident that there is no

26 dispute that defendant provided notice about the personal property found in the house.  (ECF 69-1

27 at 6 n.7.)  Defendant states it "looked to the regulations governing a landlord's actions" under

28 California Civil Code section 1983 to determine what to do with the personal property.  Similarly,

1   plaintiffs argue defendant owed them obligations as articulated in California Civil Code sections

2   1983 and 1984.  (ECF 71 at 15 n.7.)

3              Instead, the parties dispute whether defendant's notice was adequate, which is a

4   question of fact.[2]  Because the record is replete with evidence raising a genuine dispute as to the

5   adequacy of the notice (ECF 70 ¶¶ 32-36), the court DENIES defendant's request for summary

6   judgment as to plaintiffs' negligence claim.

7        D.      Negligent Infliction of Emotional Distress (NIED)

8              Defendant first argues plaintiffs "have no evidence of any physical harm that

9   resulted directly from the foreclosure or property preservation" as required for a NIED claim.

10  (ECF 69-1 at 18.)   Even if physical injury is not required, defendant argues, plaintiffs have not

11  "put forward any real evidence of emotional distress . . . ."  (*Id.* at 19.)  Plaintiffs counter their

12  personal testimony regarding their emotional distress is sufficient evidence to overcome a motion

13  for summary judgment.  (ECF 71 at 21.)  The court need not address the duty element as

14  explained above.

15             Negligent infliction of emotional distress cases fall into two categories:

16  "bystander" cases in which the plaintiff is not physically impacted or injured, but instead

17  witnesses a third person being injured; and "direct victim" cases where the plaintiff's claim of

18  emotional distress is based on violation of a duty owed to the plaintiff directly.  The present case,

19  plaintiffs claim, is in the "direct victim" category because "they are seeking recovery for

20  emotional distress caused by injuries the [p]laintiffs themselves sustained."  (ECF 71 at 18 n.16.)

21  Accordingly, the court addresses the requirements for a "direct victim" claim only.

22             The negligent causing of emotional distress is not an independent tort, but is a

23  species of negligence.  *See Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583,

24  _____

25     [2] Because plaintiffs conceded at hearing that the complaint has no allegations that a
    landlord-tenant relationship was formed between the parties, the court does not address plaintiffs'
26  arguments relating to a landlord-tenant relationship on summary judgment.  *See Stations W., LLC
    v. Pinnacle Bank of Or.*, 338 F. App'x 658, 660 (9th Cir. 2009) (plaintiffs cannot use opposition
27  to summary judgment as a back door way to introduce new claims); *see also Gilmour v. Gates,
    McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her
28  complaint through argument in a brief opposing summary judgment.").

1    588 (1989).  Accordingly, the traditional elements for negligence apply with equal force.  *Id.*

2    In "direct victim" cases, California allows recovery even in the absence of impact and physical

3    injury.  *Molien v. Kaiser Found. Hosps.*, 27 Cal. 3d 916, 919 (1980) ("emotional injury may be

4    fully as severe and debilitating as physical harm, and is no less deserving of redress," therefore,

5    "the refusal to recognize a cause of action for negligently inflicted injury in the absence of some

6    physical consequence is . . . an anachronism").  However, to recover for emotional distress arising

7    solely out of property damage, there must be a showing of some preexisting relationship or

8    intentional tort.  *See Cooper v. Superior Court*, 153 Cal. App. 3d 1008, 1011-13 (1984); *see also*

9    *Michell v. Key*, 21 F.3d 1114 (9th Cir. 1994) (recognizing *Cooper* as the controlling authority in

10   NIED claims resulting from property damage).  The preexisting relationship must involve an

11   aspect of trust and confidence that gives rise to a duty of care.  *Sher v. Leiderman*, 181 Cal. App.

12   3d 867, 884 (1986).  Examples of such relationships include those between an insurer and an

13   insured and between a bailor and a bailee.  *Patel v. United States*, 806 F. Supp. 873, 879 (N.D.

14   Cal. 1992).

15            Here, plaintiffs aver they have suffered emotional distress because "[d]efendants,

16   its agents, contractors and/or employees entered the [p]laintiffs' property and house without

17   permission or authorization" (ECF 9 ¶ 55), and "'trashed out' an abundance of personal property

18   belonging to [p]laintiffs" (ECF 71 at 20).  Plaintiffs have not, however, presented evidence of a

19   preexisting relationship between the parties as required.  Accordingly, California law does not

20   permit the type of damages they seek based on this claim.  The court GRANTS defendant's

21   motion to summary judgment as to the NIED claim.

22            E.      Intentional Infliction of Emotional Distress  (IIED)

23            Defendant argues plaintiffs' claim for IIED "fails for three independent reasons."

24   (ECF 69-1 at 19.)  First, defendant argues its conduct "in foreclosing and disposing of abandoned

25   personal property after giving notice does not meet the extreme and outrageous standard " as

26   required.  (*Id.* at 20.)  Second, defendant's conduct was not directed at plaintiffs, rather it "acted

27   in a routine manner when preparing a foreclosed upon property for sale . . . ."  (*Id.*)  Finally,

28   /////

                                                    14

1    defendant argues plaintiffs' IIED claim fails because there is no evidence of extreme distress.

2    (*Id.*)

3           Plaintiffs respond that "[t]he circumstances of the present case are highly unusual

4    and go far beyond the typical foreclosure scenario" because defendant completely disposed of "all

5    possessions in a fully furnished home" "without [plaintiffs'] being provided an opportunity to

6    retrieve such property."  (ECF 71 at 22-23.)

7           To prevail on an IIED claim, a plaintiff must prove: "(1) extreme and outrageous

8    conduct by the defendant with the intention of causing, or reckless disregard of the probability of

9    causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and

10   (3) actual and proximate causation of the emotional distress by the defendant's outrageous

11   conduct."  *Avina v. United States*, 681 F.3d 1127, 1131 (9th Cir. 2012) (applying California law).

12          As to the first element, the conduct must be so extreme, measured by an objective

13   standard, as to exceed all bounds of decency tolerated by a civilized society.  *Hughes v. Pair*,

14   46 Cal. 4th 1035, 1051 (2009).  Moreover, a defendant's conduct must be with the intent to inflict

15   injury or must be engaged in with the realization that an injury may result.  *Id.*  That is, the

16   outrageous conduct must be "directed at the plaintiff, or occur in the presence of a plaintiff of

17   whom the defendant is aware."  *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991).  This

18   is what distinguishes IIED from NIED.  *Id.* at 904.  With respect to the second element, the

19   California Supreme Court has set a "high bar."  *Hughes*, 46 Cal. 4th at 1051.  "Severe emotional

20   distress means emotional distress of such substantial quality or enduring quality that no

21   reasonable [person] in civilized society should be expected to endure it."  *Id.* (internal quotations

22   omitted).

23          Here, plaintiffs do not allege that defendant's conduct was "primarily directed" at

24   them with the intent of causing emotional distress as required under California law.  *Christensen*,

25   54 Cal. 3d at 903.  Moreover, nothing in the record shows that plaintiffs were present at the time

26   of the foreclosure or when defendant "trashed out" their personal property, thus, recklessness

27   cannot be a ground for liability.  The court GRANTS defendant's motion for summary judgment

28   on the IIED claim.

1    F.    Invasion of Privacy

2          Plaintiffs' claim for invasion of privacy is based on an intrusion theory only.  (ECF

3    71 at 24 n.18.)

4          Defendants argue this claim fails for three reasons.  First, plaintiffs did not have a

5    reasonable expectation of privacy because "they neither owned nor resided in the Property, and

6    they had notice that it was sold to a third party through a foreclosure."  (ECF 69-1 at 22.)  Second,

7    defendants argue, the intrusion was not offensive because "the Property appeared abandoned."

8    (*Id.*)  Finally, plaintiffs' claim fails, defendant reasons, because Mr. Ash, by signing the deed

9    trust, consented to defendant's entry.  (*Id.*)

10         As to defendant's first argument, plaintiffs respond, "[p]laintiffs resided in the

11   property part time," and "maintained an abundance of personal property in the home . . . ."  (ECF

12   71 at 24.)  As to defendant's second argument, plaintiffs respond that the property was not

13   abandoned because "it was fully furnished, in neat order, the interior was in excellent condition,

14   and it contained many personal and unique items . . . ."  (*Id.*)  Finally, as to defendant's last

15   argument, plaintiffs respond, "there is a material dispute as to whether Mrs. Ash was relying on

16   the belief that BofA was not foreclosing on the Property and that she certainly would not have

17   consented . . . had she known otherwise."  (*Id.* at 25.)

18         A plaintiff alleging a privacy violation based on the common law tort of intrusion

19   must establish two elements: (1) the defendant's intentional intrusion into a place "as to which the

20   plaintiff has a reasonable expectation of privacy" and (2) "the intrusion must occur in a manner

21   highly offensive to a reasonable person."  *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286

22   (2009).  As to the first element of the common law tort, a plaintiff must show "the defendant

23   penetrated some zone of physical or sensory privacy . . . ."  *Shulman v. Grp. W Prods., Inc.*, 18

24   Cal. 4th 200, 232 (1998).  The reasonableness of the privacy expectation is determined by an

25   objective standard.  *Id.*  The reasonableness of privacy expectations may be linked to such factors

26   as: (a) "the identity of the intruder"; (b) "the extent to which other persons had access to the

27   subject place, and could see or hear the plaintiff"; and (c) "the means by which the intrusion

28   occurred."  *Hernandez*, 47 Cal. 4th 272 at 287.

As to the second element, the determination of offensiveness depends on a case-by-case analysis, and each case must be decided on its own facts.  Relevant factors include: (a) "the degree and setting of the intrusion" and (b) "the intruder's motives and objectives."  *Id.* Finally, voluntary consent is a defense to a common law invasion of privacy claim.  *Hill v. Nat'l Collegiate Athletic Ass'n.*, 7 Cal. 4th 1, 26 (1994).

As to defendant's first argument that plaintiffs did not have ownership or possessory interest, as explained above with respect to trespass, there is a genuine dispute as to whether plaintiffs had a possessory interest in the Property.  Moreover, plaintiffs have presented sufficient evidence to establish a genuine dispute as to whether plaintiffs had a reasonable expectation of privacy.  A reasonable jury could find plaintiffs had a reasonable expectation of privacy in the home while Mrs. Ash was seeking to assume the loan to prevent it from being foreclosed.  As discussed with respect to conversion, there is a genuine dispute as to plaintiffs' intent to abandon.  Finally, as to consent, the court finds defendant has not met its burden. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) ("If the movant bears the burden of proof on an issue, . . . because . . . as a defendant he is asserting an affirmative defense, [defendant] must establish beyond peradventure *all* of the essential elements of . . . defense to warrant judgment in [defendant's] favor." (emphasis in original)); *see also* S. *Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).  Accordingly, the court DENIES defendant's request for summary judgment with respect to this claim.

G.      Breach of Contract

At the hearing, plaintiffs conceded they could not demonstrate a breach of contract claim.  Therefore, the court, without further discussion, GRANTS defendant's motion for summary judgment as to Mrs. Ash's claim for breach of contract.

H.      Breach of the Implied Covenant of Good Faith and Fair Dealing

For the same reasons set forth above in the breach of contract section, the court GRANTS defendant's motion for summary judgment as to plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.

/////

17

I.      Unjust Enrichment

Also for the reasons set forth above in discussing breach of contract, the court GRANTS defendant's motion as to plaintiffs' claim for unjust enrichment to the extent it is pled as an independent cause of action.

J.      Fraud

Plaintiffs' allegations of fraud are alleged by Mrs. Ash only.  (ECF 9 ¶¶ 87-92.) Defendant argues the fraud claim cannot succeed because "they cannot provide evidence that [defendant] made a false representation regarding: (1) the loan modifications or the forbearance; or (2) the status of the estate's account."  (ECF 69-1 at 26.)  "[Mrs. Ash] could not have justifiably relied on [defendant] not to foreclose," defendant argues, because Mrs. Ash "knew she had failed to meet the modification conditions, and that [defendant] had closed her file for non-compliance."  (*Id.* at 27.)

Plaintiffs respond there are genuine disputes as to defendant's alleged misrepresentation because defendant did not tell Mrs. Ash about "the impending foreclosure sale in May 2008 and left her believing that she was still in the workout process."  (ECF 71 at 25.) Even assuming there were disclosures in the documents, plaintiffs argue, defendant led Mrs. Ash to believe "that it would not foreclose on the property without first notifying her that it was so doing."  (*Id.*)  As a result of defendant's alleged fraud, plaintiffs say, "the resulting damage to [them] is clear and undeniable in the loss of their valuable, and in some instances priceless, personal property."  (*Id.* at 26.)

In California, a claim of fraud has five elements: (1) the defendant made a false representation as to a past or existing material fact; (2) the defendant knew the representation was false at the time it was made; (3) in making the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably and reasonably relied on the representation; and (5) the plaintiff suffered resulting damages.  *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).

The first element may consist of: (a) a knowing false representation; (b) concealment or nondisclosure of facts; or (c) a promise made with no intent to perform.  CAL. CIV. CODE § 1710.  The second element is the requirement of showing scienter: it must be shown

18

1   that defendant knew the statement was false or acted with reckless disregard of its truth or falsity.

2   *Lazar*, 12 Cal. 4th at 638.  To satisfy the third element, a plaintiff must show defendant intended

3   to induce reliance on the false information.  *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173-

4   74 (2003).  A plaintiff can meet the fourth element, reliance, by proving plaintiff actually and

5   justifiably relied on defendant's misrepresentation.  *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1091

6   (1993).

7           The court finds plaintiffs have not met their burden of showing a genuine dispute

8   as to their fraud claim.  As to defendant's alleged misrepresentations during the loan modification

9   negotiations, defendant cites to an email dated November 1, 2007, where defendant notifies

10  Mrs. Ash that "[w]hen loans are reviewed for work out, and the loan is in foreclosure, the

11  foreclosure sale date is not cancelled but extended in order for the loan to be reviewed."  (ECF

12  69-7, Ex. I at 4.)  Defendant also cites to Mrs. Ash's deposition testimony where she states she

13  understood that if she did not comply with the requirements of the loan modification, the

14  foreclosure would continue.  (ECF 69-4, Ex. A at 23.)  Accordingly, defendant concludes there

15  was no misrepresentation as to foreclosure because Mrs. Ash was on notice that if the

16  modification did not succeed, as it did not, the foreclosure would not be canceled.  (ECF 69-1 at

17  27.)

18          Mrs. Ash argues defendant's representatives "led her to believe that [defendant]

19  would not foreclose on the property without first notifying her that it was so doing."  (ECF 71 at

20  25.)  She does not cite to any evidence in the record to support her argument.  FED. R. CIV. P.

21  56(c)(1)(A); *see Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1058 (9th Cir. 2009) ("The party

22  opposing summary judgment must direct [the court's] attention to specific, triable facts, and the

23  reviewing court is not required to comb through the record to find some reason to deny a motion

24  for summary judgment.") (citations and internal quotations omitted); *Hernandez v. Spacelabs*

25  *Med. Inc.,* 343 F.3d 1107, 1112 (9th Cir. 2003) ("[The nonmoving party] cannot defeat summary

26  judgment with allegations in the complaint, or with unsupported conjecture or conclusory

27  statements.").  Accordingly, because defendant has met its initial burden of showing no genuine

28  dispute as to the first element of a fraud claim, and plaintiffs have not produced specific evidence

1   raising a dispute, the court GRANTS defendant's motion for summary judgment as to plaintiffs'

2   fraud claim.

3       K.    California Business and Professions Code Section 17200

4       Defendant argues plaintiffs' claim under section 17200 of California Business and

5   Professions Code cannot succeed as a matter of law.  (ECF 69-1 at 28.)  First, defendant argues

6   "[p]laintiffs have not alleged any violation of law or regulatory provision," thus, "they cannot

7   proceed under the unlawful prong . . . ."  (*Id.* at 30.)  As to the unfairness prong, defendant

8   argues, "the utility of the foreclosure and removal of the personal property . . . to sell the Property

9   for a better price is greater than any harm [p]laintiffs may have suffered in losing possessions

10   they had neglected for years."  (*Id.*)  Moreover, "[p]laintiffs have been unable to tie [defendant's]

11   behavior to any violation of a statute, regulation or constitutional provision."  (*Id.*)  Finally, as to

12   the fraudulent prong, "[p]laintiffs cannot identify a statement by [defendant] that was likely to

13   mislead them . . . ."  (*Id.*)

14       As to the unlawful prong, plaintiffs allege defendant's "agents, contractors, and/or

15   employees . . . entered into . . . [p]laintiffs' home without reasonable justification, trespassed on

16   her property and disposed of . . . [p]laintiffs' possessions . . . ."  (ECF 9 ¶ 72.)  As to the

17   unfairness prong, plaintiffs respond defendant's "foreclosure and seizing . . . [p]laintiffs' home

18   and disposing of all of their possessions in the home while leading Mrs. Ash to believe that she

19   was in the process of negotiating a work-out or a loan modification are unfair acts and practices."

20   (ECF 71 at 27.)  Finally, as to the fraudulent prong, plaintiffs respond "the bait and switch tactics

21   associated with the dual track system constitute fraud under the consumer protection statute as

22   they deceived Mrs. Ash and are the type of conduct likely to deceive the public at large."  (*Id.*)

23       California Business and Professions Code section 17200 prohibits unfair

24   competition, which is defined as prohibiting any "unlawful, unfair or fraudulent business act or

25   practice."  CAL. BUS. & PROF. CODE § 17200.  The statute's language has been construed as

26   prohibiting three distinct types of practices: (1) unlawful acts or practices; (2) unfair acts or

27   practices; and (3) fraudulent acts or practices.  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,

28   20 Cal. 4th 163, 180 (1999).  Accordingly, the court will address each prong in turn.

1

2

3   1.   "Unlawful" Business Acts

4   In determining whether a practice is "unlawful" within the meaning of the statute, courts consult federal, state, local, or common law as a predicate for a section 17200 violation. *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992).  Hence, to allege a cause of action under the "unlawful" prong, a plaintiff must show a violation of some independent law.  *Id.* (section 17200 "borrows" violations of other laws and treats them as unlawful practices actionable separately under section 17200).

5

6

7

8   Here, because the court has denied defendant's motion as to plaintiffs' claims for conversion, negligence, and invasion of privacy, which are common law claims, the court DENIES defendant's motion for summary judgment as to plaintiffs' section 17200 claim to the extent it is based on the unlawful practices prong.  *See Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994) ("The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made.").

9

10

11

12

13

14

15   2.   "Unfair" Business Acts

16   As to the "unfairness" prong, the proper definition "is currently in flux" among California courts.  *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007). Before the California Supreme Court's decision in *Cel-Tech*, courts held that unfair conduct is shown by conduct that "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."  *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886-87 (1999).  "'Unfair' simply means any practice whose harm to the victim outweighs its benefits."  *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 839 (1994).  Essentially, courts applied a balancing test.  *Id.*

17

18

19

20

21

22

23

24   However, in *Cel-Tech*, the California Supreme Court held that "unfair" means "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  20 Cal. 4th at 187.  The court further

25

26

27

28

21

1  required that "any finding of unfairness to competitors under section 17200 be tethered to some

2  legislatively declared policy or proof of some actual or threatened impact on competition."  *Id*. at

3  186-87.  Yet the court expressly limited the new test to actions by competitors alleging

4  anticompetitive practices by stating that "[n]othing we say relates to actions by consumers . . . ."

5  *Id*. at 187 n.12.  Following *Cel-Tech*, "[t]he California courts have not yet determined how to

6  define 'unfair' in the *consumer* action context . . . ."  *Lozano*, 504 F.3d at 736 (emphasis in

7  original).  Some courts have applied the *Cel-Tech* test to consumer actions, while others have

8  applied the old balancing test.  *Id*. at 735 (balancing test involves balancing harm to consumer

9  against utility of defendant's practice).

10          Here, the court does not address the question of which test to apply because the

11  court finds plaintiffs have not met their burden of directing the court to specific evidentiary facts.

12  Plaintiffs thus have not met their burden of establishing a genuine dispute as to the unfairness

13  prong of their section 17200 claim.  *See S. A. Empresa De Viacao Aerea Rio Grandense (Varig*

14  *Airlines) v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982) (holding "a party cannot

15  manufacture a genuine issue of material fact merely by making assertions in its legal

16  memoranda").

17          3.  Fraudulent Acts

18          The third type of conduct proscribed by section 17200 is "fraudulent" business

19  practices.  The type of "fraud" contemplated by this section does not refer to common law fraud

20  or deception.  "Fraudulent," as used in the statute, "only requires a showing [that] members of the

21  public are likely to be deceived."  *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th

22  638, 645 (2008) (citing *Saunders*, 27 Cal. App. 4th at 839).  The "reasonable person" standard is

23  used in determining whether the public is likely to be deceived.  *Aron v. U-Haul Co. of Cal.*,

24  143 Cal. App. 4th 796, 806 (2006).

25          Here, plaintiffs argue "the bait and switch tactics associated with the dual track

26  system constitute fraud under the consumer protection statute as they deceived Mrs. Ash and are

27  the type of conduct likely to deceive the public at large."  (ECF 71 at 27.)  For the same reasons

28  /////

1  set forth above, the court finds plaintiffs have not met their burden of establishing a genuine

2  dispute as to the fraudulent prong of plaintiffs' section 17200 claim.

3  IV.    <u>CONCLUSION</u>

4          For the foregoing reasons, the court orders as follows:

5          1.   Defendant's motion for summary judgment is GRANTED as to plaintiffs'

6               claims for trespass, negligent infliction of emotional distress, intentional

7               infliction of emotional distress, breach of contract, breach of the implied

8               covenant of good faith and fair dealing, unjust enrichment, and fraud.

9          2.   Defendant's motion for summary judgment is DENIED as to plaintiffs' claims

10              for conversion, negligence, invasion of privacy, and California Business and

11              Professions Code section 17200 to the extent it is based on the unlawful

12              practices prong.

13         IT IS SO ORDERED.

14  DATED:  January 27, 2014.

15

16

17                                         UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28